David S. Gingras, #021097
**Gingras Law Office, PLLC**
3961 E. Chandler Blvd., #111-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendant Xcentric Ventures, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LEGEND-MORPHY, a general partnership, and LAURA SPERBER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company; and DOES 1–10,<br><br>Defendants.. | Case No.: 12-CV-2260-ROS<br><br>**MOTION TO DISMISS** |

Defendant XCENTRIC VENTURES, LLC ("Xcentric") respectfully moves the Court for an order dismissing Plaintiff LAURA SPERBER's ("Ms. Sperber") second cause of action in her First Amended Complaint (Doc. #17) pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that this claim fails to allege facts sufficient to state a claim upon which relief can be granted. Xcentric further requests that the second cause of action be dismissed without leave to amend on the basis that further amendments would be futile.

**I.    BACKGROUND**

Defendant Xcentric operates the website www.ripoffreport.com. *See* First Amended Complaint ("FAC") ¶ 3. The Ripoff Report website is an online complaint forum where anyone is allowed to post free complaints about companies or individuals. *See* FAC ¶ 9. Ms. Sperber allegedly operates an auction company specializing in rare coins. *See* FAC ¶¶ 1–2.

On September 24, 2012, an anonymous third party posted a complaint about Ms. Sperber claiming that she has been "indicted on charges of racketeering and money laundering[]" and that "She is a well known loud mouthed ... coin dealer." FAC ¶ 15. Ms. Sperber alleges that these assertions are "completely false". FAC ¶ 16.

Shortly after the initial Ripoff Report post was made, Ms. Sperber alleges that another unknown third party posted two responses written in her name (i.e., responses which falsely state that they were written *by* Ms. Sperber). FAC ¶¶ 17–19. Ms. Sperber contends that these two imposter posts "falsely suggest that Sperber uses, endorses or otherwise approves of Ripoff Report." FAC ¶ 19.

Based on these facts, Ms. Sperber asserts a single cause of action for "False Advertising and False Designation" under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As explained herein, even if Ms. Speber's factual allegations are true, she has failed to state a claim upon which relief may be granted. As such, her Lanham Act claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    ARGUMENT

As the Court is aware, this is Xcentric's second Rule 12(b)(6) Motion to Dismiss. In its first motion filed on Nov. 13, 2012 (Doc. #9), Xcentric sought dismissal of Ms. Sperber's Lanham Act claim primarily on the basis that she lacked standing under the Lanham Act because did not allege that Xcentric was her competitor. Xcentric's first motion also argued that Ms. Sperber's Lanham Act claim was precluded by the Communications Decency Act, 47 U.S.C. § 230(c)(1) (the "CDA").

After the motion was filed, Ms. Sperber amended her Complaint as a matter of right under Fed. R. Civ. P. 15(a)(1)(B). Although she did not provide a redline copy of her revised pleading, it appears she is seeking to avoid the standing issue by adding new facts in FAC ¶ 34. In short, Ms. Sperber claims to now have standing because she competes with *a third party*—Goldline International—and because Xcentric's website contains a small advertisement for Goldline. Ms. Sperber thus perceives she has alleged sufficient facts to resolve the concerns in Xcentric's original Motion to Dismiss.

1  Ms. Sperber's best efforts notwithstanding, these changes only underscore the
2  validity of Xcentric's original arguments. As such, the Lanham Act claim remains
3  subject to dismissal under Rule 12(b)(6).

4  However, in the interests of simplicity, rather than beginning with a discussion of
5  the merits of the Lanham Act claim as it did in the prior Motion to Dismiss, Xcentric
6  contends that it is unnecessary to address the merits of this claim. This is so because as-
7  pleaded, Ms. Sperber's Lanham Act claim is clearly barred by the CDA.

### a. The CDA Bars Lanham Act Claims Based On "Publishing" Allegedly False Statements By Third Parties

10  As noted in Xcentric's original motion, the CDA is an extremely simple law which
11  is intended to protect website operators like Xcentric from liability based on their
12  decision to "publish" content created by a third party. *See Global Royalties, Ltd. v.*
13  *Xcentric Ventures, LLC*, 2007 WL 2949002, *3 (D.Ariz. 2007) (explaining, "the CDA
14  nullifies the common law rule [allowing publishers to be held liable for material created
15  by third parties] and broadly immunizes website operators from liability for third-party
16  content ... .") The CDA establishes a very bright-line rule—website owners and
17  operators like Xcentric cannot be treated as the "speaker or publisher" of material posted
18  to their websites by a third party. *See Global Royalties v. Xcentric Ventures, LLC*, 544
19  F.Supp.2d 929 (D.Ariz. 2008) (Xcentric entitled to 12(b)(6) dismissal of claims based on
20  material posted on the Ripoff Report website by a third party); *Asia Economic Institute,*
21  *LLC v. Xcentric Ventures, LLC*, 2011 WL 2469822, *6 (C.D.Cal. 2011) (compiling
22  numerous cases and explaining, "If an interactive computer service does not function as
23  an information content provider with regard to the statements underlying the lawsuit, that
24  service is entitled to immunity under the CDA.")

25  CDA immunity has been characterized as "quite robust". *GW Equity, LLC v.*
26  *Xcentric Ventures, LLC*, 2009 WL 62173, *17 n.4 (N.D.Tex. 2009). However, it is
27  certainly not unlimited. For one thing, the CDA contains an express statutory exemption
28  for federal *criminal* laws. *See* 47 U.S.C. § 230(e)(1).

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

In addition, some plaintiffs have argued that the CDA *never* applies to federal intellectual property claims like copyright and trademark infringement. This position is based on another exception codified in 47 U.S.C. § 230(e)(2) which includes the heading "No effect on intellectual property law" and which states: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." When discussing the point indirectly, the Ninth Circuit has implied that the CDA has no application to federal IP claims.[1] *See Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (concluding the CDA bars intellectual property claims arising under *state law*, but noting in dicta that "the CDA does not clothe service providers in immunity from [federal] 'law[s] pertaining to intellectual property.'") (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)).

At first blush, this might suggest that the CDA has no application here. However, upon closer inspection, Xcentric asserts that nothing in the CDA precludes its application to federal trademark claims in any situation which requires treating Xcentric as the "speaker or publisher" of material submitted to its website by a third party.

This argument is not novel. First, 47 U.S.C. § 230(e)(2) does <u>not</u> state that the CDA can never be applied to federal IP claims. Rather, the 17 words in this section merely advise that "Nothing in this section shall be construed *to limit or expand* any law pertaining to intellectual property." (empahsis added). Thus, courts remain free to apply the CDA in federal IP cases as long as the final result is consistent with *existing* intellectual properly law while being careful to neither *limit* nor *expand* the law pertaining to the type of intellectual property involved. Clearly, if Congress wanted to carve out a *per se* exception for all trademark claims, it easily could have done so by merely rewording § 230(e)(2) to say "Nothing in this section shall ~~be construed to limit or expand~~ <u>apply to</u> any law pertaining to intellectual property."

---

[1] Website owners facing claims of copyright infringement arising from material posted on their site by a third party are generally protected from liability under a different immunity scheme; the Digital Millennium Copyright Act, 17 U.S.C. §§ 512, *et seq*. (the "DMCA"). The DMCA will be discussed in subsequent briefing in this case.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

Second, courts have agreed that Lanham Act claims <u>are</u> preempted by the CDA if they seek to impose liability on a website operator for "publishing" material created by a third party. For example, in *Kruska v. Perverted Justice Found., Inc*., 2008 WL 2705377, *1 (D.Ariz. 2008), the plaintiff, Jan Kruska, sued website hosting company GoDaddy, Inc. because a third party used GoDaddy's services to operate "several web sites which allege that, *inter alia*, Kruska is a convicted child abuser, a convicted child molester, and a pedophile."

Although its analysis on this point is brief, the plaintiff attempted to assert a Lanham Act claim against GoDaddy under 15 U.S.C. § 1125, arguing that because it was a federal IP claim, the CDA did not apply at all. Despite the egregious facts of that case, the district judge flatly rejected the plaintiff's arguments, concluding, "<u>Kruska's claim that Section 43(a) of the Lanham Act defeats the immunity provision in the CDA has no support in statute or case law</u>." *Kruska*, 2008 WL 2705377, *3 (empahsis added). After briefly explaining the limited application of trademark claims, the court found that GoDaddy was entitled to CDA immunity even as to plaintiff's Lanham Act claim; "Consequently, the Court concludes Kruska's interpretation use [sic] of the Lanham Act is without merit and does not override the immunity granted by the CDA." *Id*.

Similarly, in *Black v. Google, Inc*., 2010 WL 3222147 (N.D.Cal. 2010), the district court held that a Lanham Act false advertising claim was barred by the CDA because it attempted to hold Google liable for "publishing" third party content:

> Plaintiffs also argue that Defendant [Google] could be held liable because it sponsored and endorsed the comment. However, Plaintiffs make no allegations that suggest any sponsorship or endorsement of the comment by Defendant. Even if they did, Defendant would remain entitled to immunity. Plaintiffs' attempt to depict Defendant as a sponsor or endorser of the comment is, in effect, an end-around the prohibition on treating it as the publisher or speaker of it. Such a ploy, if countenanced, would eviscerate the immunity granted under § 230. Further, even if Defendant were a sponsor or endorser, the fact remains that Plaintiffs seek to hold it liable for content generated by a third-party.

*Black*, 2010 WL 3222147, *3 (dismissing Lanham Act claims per 12(b)(6)).

The rationale underlying these holdings is well-founded. As the Ninth Circuit has explained, "Section 230 was enacted, in part, to maintain the robust nature of Internet communication, and accordingly, to keep government interference in the medium to a minimum." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). In addition, a secondary purpose of the CDA is to encourage website owners to take an active role in screening offensive content without fear that they would face liability for "publishing" any remaining material; "The second reason for enacting § 230(c) was to encourage interactive computer services and users of such services to self-police the Internet for obscenity and other offensive material ... ." *Batzel*, 333 F.3d at 1028. This immunity applies even when a website operator refuses to remove material upon demand; "Unless Congress amends the CDA, it is not a bar to immunity for an Internet provider to refuse to remove defamatory material created by a third party … ." *GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173, *19 (N.D.Tex. 2009); *see also Global Royalties*, 544 F.Supp.2d at 933 (same).

To promote these goals, the CDA is uniformly construed as an absolute bar to <u>any claim</u> that would substantively require the court to treat a website owner at the "publisher or speaker" of material posted by a third party regardless of the name of the legal theory presented. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) ("a plaintiff cannot [avoid the CDA and] sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence."); *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008) (admonishing, "close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged-or at least tacitly assented to-the illegality of third parties ... . [S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.")

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

1  Importantly, although the Ninth Circuit itself has never considered the merits of
2  this exact question, it *has* held that the CDA applies in a factually analogous scenario.
3  For example, in this case Ms. Sperber's primary complaint seems to be that a third party
4  posted a comment on Xcentric's website www.RipoffReport.com which suggested
5  (falsely) that it was written *by* Ms. Speber.  She contends that Xcentric may be held
6  liable for this conduct because the author's impersonation of her implies (falsely) that she
7  "uses, endorses or otherwise approves of Ripoff Report." FAC ¶ 31.

8  A virtually identical set of facts occurred in *Carafano v. Metrosplash.com, Inc.*,
9  339 F.3d 1119 (9th Cir. 2003).  In that case, the plaintiff was a famous actress who
10  appeared in numerous films and television shows including "Star Trek: Deep Space
11  Nine," and "General Hospital." *Carafano*, 339 F.3d at 1121.  The defendant operated an
12  online dating website via its website www.MatchMaker.com.  *See id*.

13  A malicious third party created a "hoax" personal dating profile using Carafano's
14  name and image.  The profile contained language suggesting that Ms. Carafano "was
15  looking for a 'hard and dominant' man with 'a strong sexual appetite' and that she 'liked
16  sort of being controlled by a man, in and out of bed.'" *Id*.  Users who sent an inquiry to
17  the email address associated with the hoax profile received an automatic email response
18  which included Carafano's home address and telephone number.  *See id*.

19  After learning of the hoax page and after receiving several threatening inquiries
20  including a "sexually explicit fax that also threatened her son[]", Carafano sued the
21  website operator under various state-law theories including "invasion of privacy,
22  misappropriation of the right of publicity, defamation, and negligence." *Id*. at 1122.  Its
23  significant sympathy for Ms. Carafano notwithstanding, the Ninth Circuit found the
24  website operator was immune from suit under the CDA; "despite the serious and utterly
25  deplorable consequences that occurred in this case, we conclude that Congress intended
26  that service providers such as Matchmaker be afforded immunity from suit." *Id*. at 1125.
27  The same outcome has been affirmed in other cases of online "hoax" posts.  *See Zeran*,
28  129 F.3d at 330 (granting judgment on the pleadings based on CDA immunity).

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

To be clear—the plaintiffs in *Zeran* and *Carafano* did not assert Lanham Act claims, presumably because they understood the facts simply did not support such a legal theory. Nevertheless, the facts of *Zeran*, *Carafano* and this case are functionally identical—each case involved "hoax" posts made to an interactive website by a third party who used the plaintiff's name without permission. Despite the far more egregious facts in *Carafano*, the Ninth Circuit found the CDA barred every legal theory presented. Thus, the real question here is whether Ms. Sperber is entitled to a *different* result merely by changing the name of her legal theory from "misappropriation of the right of publicity" or "negligence" to "false advertising under the Lanham Act"?

The answer to that question is clearly no for two reasons. First, even though she has creatively attempted pleaded this theory as a pseudo-federal intellectual property claim, accepting her argument would require the Court to treat Xcentric as the "speaker or publisher" of the "hoax" rebuttal submitted by a third party using Ms. Sperber's name. This is exactly what the CDA prohibits—"[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to <u>any cause of action</u> that would make service providers liable for information originating with a third-party user of a service.'" *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, *7 n.21 (M.D.Fla. 2008) (emphasis added) (quoting *Almeida*, *supra*, 456 F.3d at 1321).

Second, Ms. Sperber's Lanham Act claim is clearly outside the narrow IP-claim exception of 47 U.S.C. § 230(e)(2) because her theory is sustainable only if the Court were to significantly *expand* the Lanham Act far beyond its current narrow scope. In other words, to make her theory work, the Court must enlarge the fourth element of a Section 43(a) false advertising claim from the <u>current</u> <u>standard</u>: "the defendant caused <u>its</u> false statement to enter interstate commerce", to a much broader theory of imputed responsibility for "publishing" the false statement of a third party: i.e., "the defendant caused <s>its</s> <u>a third party's</u> false statement to enter interstate commerce ... ." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (explaining elements).

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

By this subtle change, Ms. Sperber's theory seeks to dramatically expand trademark law by treating Xcentric as the "publisher or speaker" of the two alleged imposter postings created by a third party which bear her name so that she may then impute blame Xcentric for this act of "false advertising *by proxy*". This argument represents a major expansion of trademark law and therefore the federal IP exclusion of 47 U.S.C. § 230(e)(2) does not prohibit the court from holding that the claim is barred by the CDA. For these reasons, it is unnecessary for the Court to reach the merits of Ms. Sperber's trademark claim; the Court should simply find that the second cause of action, as alleged, is barred by the CDA and thus subject to dismissal under Rule 12(b)(6).

### b.  Ms. Sperber Lacks Standing Under The Lanham Act

Even if the claim was not barred by the CDA, Ms. Sperber's Lanham Act claim continues to suffer a fatal defect—she does not allege facts sufficient to show that Xcentric is her competitor nor does she allege any sort of competitive injury *caused* by Xcentric's conduct (as opposed to the conduct of the third party who posted the hoax comments). Without these allegations, she continues to lack standing under the Lanham Act and her false advertising claim fails as a matter of law; "To establish standing for the false advertising prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to <u>the plaintiff's ability to compete with the defendant</u>." *American Specialty Health Group, Inc. v. Healthways, Inc.*, 2012 WL 4863779, *3 (S.D.Cal. 2012) (emphasis added) (quoting *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005); *see also Kournikova v. General Media Comm., Inc.*, 278 F.Supp.2d 1111, 1117 (C.D.Cal. 2003) (explaining, "Standing [to assert a false advertising claim under Section 43 of the Lanham Act] requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, [citation] (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace, [citation]; and (3) the misrepresentation implicates some purpose of the Lanham Act regarding the use of

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

9

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

trademarks. (internal citations omitted) (citing *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1106 (9th Cir. 1992); *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987) (noting the Lanham Act should not be construed to create a federal "tort of misrepresentation")).

Here, in her original Complaint Ms. Sperber failed to allege that she was a competitor of Xcentric's, nor did she allege any form of competitive injury. Following Xcentric's first motion, Ms. Sperber amended her Complaint to include new facts in ¶ 34 as follows:

> 34.   Furthermore, Xcentric seeks to capitalize on Sperber's name and reputation by using her name and reputation within the coin collecting industry to attract page views and to generate revenues through advertising companies that compete with Sperber. <u>For example, the "report" about Laura Sperber on Ripoff Report has featured advertisements for Goldline International, a seller of gold coins and other rare coins, which is a competitor of Sperber's</u>. Sperber is therefore suffering a competitive injury as a result of Xcentric's conduct in posting competing advertisements on the report concerning Sperber. (emphasis added)

These new facts are insufficient to confer standing, much less to state a proper claim under 15 U.S.C. § 1125(a)(1)(A). This is so because The Lanham Act's prohibition on false designation of origin applies only to confusion of affiliation, connection, or association between the <u>goods or services</u> of the plaintiff and the defendant. *See* 15 U.S.C. § 1125(a)(1)(A). A violation of this section occurs "'when a producer misrepresents his own goods or services as someone else's.'" *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1248 (11th Cir. 2007) (emphasis added) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)).

This is simply not what Ms. Sperber's Amended Complaint alleges. She is *not* claiming that Xcentric has made any false statements in commercial advertising regarding her goods or services, whatever they may be, nor has she alleged that Xcentric has made any false statements in commercial advertising regarding the goods or services

10

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

of her alleged competitor, Goldline International.  Instead, Ms. Sperber merely alleges that a *third party* made a false statement implying that she used Ripoff Report's website to post a comment, and that this happened to occur on a page that also contained an advertisement for an alleged competitor of hers.  While these facts might support a claim against the third party author who misappropriated Ms. Sperber's name, they do not support any cause of action against Xcentric under the Lanham Act.  *See Ascentive, LLC v. Opinion Corp.*, 2011 WL 6181452, *14–16 (E.D.N.Y. 2011) (finding Lanham Act claim against website operator was unlikely to succeed where claim was based, in part, on website's display of third party advertisements including ads for plaintiff's competitors).

This conclusion is supported by substantial authority.  For instance, in *Nemet Chevrolet Ltd. v. Consumeraffairs.com*, 564 F.Supp.2d 544 (E.D.Va. 2008), the plaintiff was a franchisor of car dealerships and the defendant operated a consumer review/ complaint website similar to Xcentric's Ripoff Report site.  After third parties posted several negative reviews about its dealerships, Nemet sued the website operator asserting claims for, *inter alia*, violations of Section 43(a) of the Lanham Act.  In its Complaint, the plaintiff tried to carefully focus its trademark claims on the alleged unlawful conduct of the website operator as separate and apart from the accuracy of the third party reviews:

> Plaintiffs assert that Defendant has violated § 43(a)(1)(A) of the Lanham Act by operating "in commerce under the guise of 'consumer affairs' for the purpose of unlawfully diverting customers and deriving a profit from misdirecting said customers" and consumers are likely to incorrectly believe that Defendant is affiliated with a state, federal or other organization.  With respect to the alleged violation of § 43(a)(1)(B) of the Lanham Act, Plaintiffs state that Defendant's use of the name "consumer affairs" misrepresents the nature and/or quality of its services and that this misrepresentation is likely to "influence the purchasing decision and deceive customers."

*Nemet Chevrolet*, 564 F.Supp.2d at 547.  The district court subsequently granted the defendant's Motion to Dismiss plaintiff's Lanham Act claims under Rule 12(b)(6)

finding that "Plaintiffs lack standing because they are not in competition with Defendant and their alleged injury is not of the sort that the Lanham Act sought to prevent." *Nemet Chevrolet*, 564 F.Supp.2d at 553. This aspect of the court's decision relied heavily upon a prior case involving the Ripoff Report website, *MCW Inc. v. Badbusinssbureau.com*, 2004 WL 833595 (N.D.Tex. 2004) which reached the same result. In *MCW*, the court held the plaintiff lacked standing to sue Xcentric's predecessor under the Lanham Act because it "contends only that it has been harmed by false advertising, not that it has been harmed by a *competitor's* false advertising touting the virtues of a competing product or service." *MCW*, 2004 WL 833595, *11–15 (N.D.Tex. 2004) (empahsis in original).

The same logic applies here. Ms. Sperber does not allege that Xcentric competes directly with her; she merely alleges that Xcentric's website contains a *truthful* advertisement about one of her competitors on a page which also contains text that was falsely attributed to Ms. Sperber by a third party. In a nutshell, these facts do not demonstrate that Xcentric is Ms. Sperber's competitor. Rather, Ms. Sperber merely contends that she has been injured by a third party's act of posting a comment using her name which falsely implied that it was written by Ms. Sperber. This is exactly the same legal theory rejected by the court in *MCW*.

### c. Ms. Sperber Has Not Alleged A Valid § 43(a) Claim

Although it is not necessary for the Court to address the actual merits of the trademark claim separate and apart from the question of standing, Ms. Sperber's Lanham Act claim fails for other reasons. Specifically, Ms. Sperber appears to assume that any unauthorized use of her name always automatically implicates the Lanham Act. This position is simply wrong as a matter of law.

Claims under 15 U.S.C. § 1125(a) require allegations sufficient to establish numerous elements which are entirely absent from Ms. Sperber's Complaint; *e.g.*, "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant <u>in a commercial advertisement</u> about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its

audience; (3) <u>the deception is material, in that it is likely to influence the [consumer's] purchasing decision</u>; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal.App.4th 313, 347–48, 109 Cal.Rptr.3d 143 (Cal.App.4th Dist. 2010) (emphasis added) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Again, in addition to these five elements, a Lanham Act false advertising claim requires proof of direct competition between the plaintiff and the defendant. *See Jurin v. Google, Inc.*, 695 F.Supp.2d 1117, 1122 (E.D.Cal. 2010) (explaining, "Without a showing of direct competition, Plaintiff fails to sustain a claim for false advertising under the Lanham Act.")

Here, it is clear that Ms. Sperber has failed to allege facts sufficient to state a valid claim. Among other things, the alleged "false advertisement" is actually not an advertisement at all; it is simply a *response* to an initial complaint about Ms. Sperber in which an alleged imposter used Ms. Sperber's name while attempting to *defend* Ms. Sperber by stating, *inter alia*, "Some people are reported [sic] i was a [sic] under investigation. This is not true ... ." FAC ¶ 17. Presumably, despite its partially exculpatory content, Ms. Sperber takes issue with other parts of the imposter's response which do seem to imply that she *was* charged with a crime, but that "these charges of money laundering were dismissed by a judge three years ago." FAC ¶ 17.

Even if the author's use of Ms. Sperber's name was literally false, this text does not contain any false material statements about Xcentric's goods or services, nor does Ms. Sperber allege that it contains any false statements about her own coin auctions or whatever other goods or services she may offer. Instead, she merely complains that she did not author this submission, and thus it is "false" to claim that she did because it implies that she "uses, endorses or otherwise approves of Ripoff Report." FAC ¶ 32. This is precisely the type of misapplied Section 43(a) claim rejected by the court in

13

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*MCW*; "In other words, MCW contends only that it has been harmed by false advertising, not that it has been harmed by a competitor's false advertising touting the virtues of a competing product or service." *MCW*, 2004 WL 833595, *13 (N.D.Tex. 2004). The Lanham Act is simply inapplicable to this scenario; "alleged reputational harm is not the type of harm addressed by the Lanham Act." *Id.* (citing *Procter & Gamble Company v. Amway Corporation,* 242 F.3d 539, 560 (5th Cir. 2001), *cert. denied*, 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001)); *see also Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 806–07 (9th Cir. 2003) (noting, "The limited purpose of trademark protections set forth in the Lanham Trade-Mark Act, is to 'avoid confusion in the marketplace' by allowing a trademark owner to 'prevent[ ] others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner.'"); *see also Nemet*, 564 F.Supp.2d at 554 (concluding "even if Plaintiffs were found to have standing to bring their false advertising claim under the Lanham Act, that this claim must be dismissed for failure to state a claim because it has not been, and cannot be, alleged that the representations at issue constitute commercial advertising as required to state a claim of false advertising.")

Here, as in *Nemet* and *MCW*, the alleged false statements at issue were *not* contained within commercial advertising of any kind. Rather, the false assertion was contained in a purely non-commercial submission which suggested that Ms. Sperber wrote a comment posted to the Ripoff Report website. Even if true, these allegations do not present a plausible claim of competitive injury, do not implicate any of the Lanham Act's consumer protection purposes and thus do not state a viable cause of action under the Lanham Act. *See Stayart v. Yahoo!, Inc.*, 623 F.3d 2010 (7th Cir. 2010) (affirming 12(b)(6) dismissal of plaintiff's Lanham Act § 43 claim against website Yahoo! based on plaintiff's lack of standing because plaintiff "does not have a commercial interest in her name ... ."); *see also Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672, 679–80 (9th Cir. 2005) (explaining, "The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark. [Defendant] Kremer's

GINGRAS LAW OFFICE, PLLC
3961 E. CHANDLER BLVD., #111-243
PHOENIX, ARIZONA 85048

1  use of the [plaintiff] Bosley Medical mark simply cannot mislead consumers into buying
2  a competing product–no customer will mistakenly purchase a hair replacement service
3  from Kremer under the belief that the service is being offered by Bosley.  Neither is
4  Kremer capitalizing on the good will Bosley has created in its mark.  Any harm to Bosley
5  arises not from a competitor's sale of a similar product under Bosley's mark, but from
6  Kremer's criticism of their services.  Bosley cannot use the Lanham Act either as a shield
7  from Kremer's criticism, or as a sword to shut Kremer up.")

For these reasons, the allegations in Ms. Sperber's second cause of action fail to demonstrate that she has standing under the Lanham Act.  As such, her trademark claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### d. The Court Should Dismiss Ms. Sperber's Lanham Act Claim Without Leave To Amend

Xcentric is mindful of the fact that in most cases, when a claim is dismissed under Rule 12(b)(6), the Court has broad discretion to permit the plaintiff to amend.  On the other hand, leave to amend should be denied when it is clear that alleging additional facts will not cure the problem; "'a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless it determines that the pleading could not be cured by the allegation of other facts</u>.'"  *OSU Student Alliance v. Ray*, --- F.3d ----, 2012 WL 5200341, *20 (9th Cir. 2012) (emphasis added) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)).

Here, Xcentric respectfully requests that if the instant motion is granted, the Court should also expressly find that no further amendment to Ms. Sperber's Lanham Act claim would cure the defects described herein and thus dismissal should be granted without leave to amend.  Ms. Sperber has already amended her pleading once as a matter of right, and the allegations set forth in the First Amended Complaint appear to fully describe the facts and events at issue here.  As such, if the present FAC is insufficient to state a claim, then clearly further amendments would not save the second cause of action.

Xcentric also notes that denying leave to amend would promote one of the fundamental purposes of the Communications Decency Act—to protect website owners from needlessly incurring significant litigation expenses arising from third party content; "[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Roommates.com, LLC*, 521 F.3d at 1175; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (agreeing, "We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from "ultimate liability," but also from "having to fight costly and protracted legal battles.") (citing *Roommates*, *supra*).

### III. CONCLUSION

For the foregoing reasons, the second cause of action for "False Advertising and False Designation" should be dismissed without leave to amend pursuant to Fed. R. Civ. P. 12(b)(6).

DATED December 17, 2012.

                                        **GINGRAS LAW OFFICE, PLLC**
                                        /S/ David S. Gingras
                                        David S. Gingras
                                        Attorney for Defendant
                                        Xcentric Ventures, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2012 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following:

John C. Lemaster, Esq.
RYLEY CARLOCK & APPLEWHITE
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417

Dale F. Kinsella, Esq.
Jeremiah T. Reynolds, Esq.
KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401

And a courtesy copy of the foregoing delivered to:
Chief Judge Roslyn O. Silver
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 624
401 West Washington Street, SPC 59
Phoenix, AZ 85003-2158

/s/David S. Gingras